**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CHARLOTTE BULGAJEWSKI, on behalf of herself
and on behalf of all others similarly situated,

    Plaintiffs,

v.

R.T.G. FURNITURE CORPORATION,

    Defendant.

CASE NO. 8:17-cv-2166-SDM-AAS

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

COMES NOW Plaintiff CHARLOTTE BULGAJEWSKI ("Plaintiff"), on her own behalf and on behalf of the settlement class defined below, and, pursuant to Federal Rule of Civil Procedure 23, files her Unopposed Motion for Preliminary Approval of Class Action Settlement, respectfully stating as follows:

Through the Court-ordered mediation process, the parties have reached a settlement in this Fair Credit Reporting Act ("FCRA") case that, if approved, would resolve this action by providing monetary relief to a settlement class consisting of 10,771 applicants and employees. The Settlement Agreement is attached hereto as Exhibit A.

Plaintiff moves the Court to preliminarily approve the proposed settlement; to conditionally certify a class, solely for purposes of settlement; to appoint Plaintiff's counsel as Class Counsel and to appoint Plaintiff as Class Representative; to approve the proposed notice to the settlement class and the procedures for providing notice; to schedule a final fairness hearing; and to set procedures and deadlines for filing claims, opting out, objecting, and filing a motion for an award of attorneys' fees, expenses, and an incentive award. A Proposed Order is attached hereto as Exhibit B.

## I.  THE CLAIMS, PROCEEDINGS, AND SETTLEMENT

### A.  The Litigation

Plaintiff brought this suit in August 2017, alleging that Defendant R.T.G. Furniture Corp., "including subsidiaries, divisions, related entities, and affiliates," had violated the FCRA. Doc. 3 (Am. Class Action Compl. and Demand for Jury Trial) at 1. (The settling entities are collectively referred to herein as "RTG"). In particular, Plaintiff alleges that the documents she was provided with her application failed to comply with the FCRA's "stand-alone disclosure" provision, which requires that "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists **solely** of the disclosure, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).  Plaintiff contends that the disclosure form she signed in conjunction with her two applications caused her confusion about the nature and scope of RTG's background investigation and her rights under federal law. Plaintiff further alleges, because of deficiencies of the disclosure, she was denied information in the format required by law,  her privacy rights were invaded and the background checks RTG conducted were not "authorized" or lawful under the FCRA and violated 15 U.S.C. § 1681b(b)(2)(A)(ii).

After the lawsuit was filed, the parties engaged in written discovery and exchanged documents.  Plaintiff served interrogatories, requests for production, and requests for admission on Defendant; received documents from Defendant; and responded to interrogatories and requests for production from Defendant.  Plaintiff also gave a deposition on January 15, 2018.

### B.  Mediation and Settlement Agreement

On February 20, 2018, the parties participated in Court-ordered mediation before Carlos

Burruezo, a certified civil mediator with several decades of experience in employment law. Mr. Burruezo has successfully mediated settlements of similar FCRA cases.

With the mediator's assistance, the parties were able to reach a settlement in principle ("Settlement") to resolve this action on the following key terms:

- Certification, for settlement purposes only, of a class of all persons as to whom RTG (including its affiliates) procured a background check, including a consumer report, in conjunction with an application for employment, promotion, or job change between August 16, 2015 and January 31, 2018 ("Settlement Class")—a class of approximately 10,771 people;

- Payment by RTG of $55 to every Settlement Class Member submitting a claim;

- Payment by RTG of an attorneys' fees and expense award approved by the Court, up to a maximum of $170,000, without diminishing any Settlement Class Member's recovery;

- Payment by RTG of a service award to the named plaintiff approved by the Court, up to a maximum of $3,500, without diminishing any Settlement Class Member's recovery; and

- Notice and administration by a Settlement Administrator at RTG's expense, without diminishing any Settlement Class Member's recovery.

The full Settlement Agreement is attached hereto as Exhibit A.[1]

If the Settlement is approved, Settlement Class Members will be able to obtain monetary benefits without undertaking the risks of litigation and without the substantial delay that would occur if the case instead proceeded through class certification, trial, and appeal proceedings, which could take several years. Plaintiff and her counsel believe the Settlement is in the best interests of the Settlement Class and seek preliminary approval and entry of the Proposed Order attached hereto as Exhibit B.

## II.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

---

[1] Under the Settlement Agreement, the Settlement Class Members would not release any claims asserted under 15 U.S.C. § 1681b(b)(3) of the Fair Credit Reporting Act, including claims of the sort asserted in *Conor S. Yeomans v. R.T.G. Furniture Corp.*, Case No. 8:18-cv-00825-SDM-JSS.

### A.     The Law Governing Preliminary Approval

The Eleventh Circuit has recognized that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *4 (S.D. Fla. Nov. 5, 2015) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice...." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted). As a general matter, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS §11.50, at 155 (4th ed. 2002).

"'At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness.' 4 Newberg on Class Actions § 11.26 (4th ed. 2010). 'Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.' *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010)." *Almanzar v. Select Portfolio Servicing, Inc.*, 2015 WL 10857401, at *1 (S.D. Fla. Oct. 15, 2015). This Court has set forth the following process for preliminary approval of a class action settlement:

> Rule 23(e), Federal Rules of Civil Procedure, permits approval of a class action settlement if the settlement is "fair, reasonable, and adequate." *See Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D.Fla.2005) (Fawsett, J.). Approval is generally a two-step process in which a "preliminary determination

4

> on the fairness, reasonableness, and adequacy of the proposed settlement terms" is reached. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed.2008). The factors considered are (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) "the likelihood of success at trial," (3) "the range of possible recovery," (4) "the complexity, expense[,] and duration of litigation," (5) "the substance and amount of opposition to the settlement," and (6) "the stage of proceedings at which the settlement was achieved." *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984).

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (Merryday, J.).

### B.  The Settlement Meets the Standard for Preliminary Approval.

The proposed Settlement is well within the range of reasonableness for class action settlements. With regard to the first factor set forth above, the parties negotiated at arms' length and with the assistance of a neutral mediator. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). Courts have consistently held that the presence of an independent mediator negates any suggestion of fraud or collusion. *See, e.g., Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016) (use of mediator indicates there is "no suggestion of fraud or collusion"); *Hall v. Bank of Am., N.A.,* 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014). There was no fraud or collusion in reaching the Settlement.

As for the second factor, the Settlement Class Members face a number of risks if this case were to continue to a litigated resolution. To prevail on their claim, Plaintiff and the Settlement Class Members must prove a "willful" violation of the FCRA to recover statutory damages. However, proving willfulness is no certainty. *See, e.g., Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case

seeking statutory damages because alleged violation was not willful); 15 U.S.C. § 1681n(a). If the litigation continued, Defendant would contest the element of willfulness on several bases. First, Defendant would argue the disclosure form did not violate the FCRA. Second, Defendant would argue if there was a violation, it was a bare procedural violation of the FCRA's technical requirements. Third, Defendant would argue the evidence forecloses a finding of willfulness. *Lewis v. Southwest Airlines Co.*, 2018 U.S. Dist. LEXIS 5576 (N.D. Tex. Jan. 11, 2018)(summary judgment for defendant on issue of wilfullness).

Defendant would argue that there was no guidance from the Courts of Appeals or FTC holding that the inclusion of state law information violated the FCRA. While Plaintiff certainly would argue that Defendant's positions are incorrect, the Settlement Class must acknowledge the risk from those positions that could negate any recovery. *See, e.g., James v. JPMorgan Chase Bank, N.A.*, 2017 WL 2472499, at **1–2 (M.D. Fla. June 5, 2017) (Merryday, J.) (granting approval where, *inter alia*, the defendant "asserts several defenses…which might preclude or reduce recovery"); *Holman*, 2009 WL 4015573, at *5 ("Success at trial is uncertain because the defendant possesses legal and factual defenses to the plaintiffs' claims as well as several grounds for challenging class certification.").

With regard to the third factor set forth above, the range of statutory damage awards for violations of the FCRA is $100 to $1000. 15 U.S.C. § 1682n(a). And of course, a verdict of zero is possible if the jury finds that any violations of the FCRA were not willful. Given the nature of the FCRA violations alleged here and Defendant's contentions, discussed *supra*, the Settlement Class Members face a risk that even if they successfully establish a violation of the FCRA at trial, they would receive an award on the low end of the range of possible recovery.

The Settlement compensation and structure appropriately reflect a discount for that risk and the early and certain resolution of the class claims.

The compensation provided by the Settlement—$55 per Settlement Class Member (which will not be discounted by any fee award, incentive award or the cost of settlement administration)—is similar if not greater than the compensation provided in numerous other court-approved settlements of FCRA stand-alone disclosure cases. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30 per class member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017); *see, e.g.*, *Marcum v. Dolgencorp, Inc.*, No. 3:12-cv-00108 (E.D. Va. 2014) ($53 gross payment per class member reduced by attorneys' fees and service awards); *Knights v. Publix Super Markets, Inc.*, No. 3:14-cv-006720 (M.D. Tenn. 2014) ($48.55 per class member); *Pitt v. Kmart Corp.*, No. 3:11-cv-00697 (E.D. Va. 2013) ($18 or $38 per class member depending on date of FCRA violation). While there are certainly settlements of FCRA stand-alone disclosure cases with higher per class member recoveries, the recovery here is well within the range of reasonableness, particularly in light of the risks the Settlement Class Members face in this case.[2]

---

[2] "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542-43 (approving settlement equal to 3 to 5% of the per

7

With regard to the fourth factor above, the Settlement Class Members could expect litigation of this case to be complex, expensive, and to last for many years. As set forth above, the element of willfulness involves complexity as it requires a detailed examination of the state of the law and regulatory guidance, and any changes to that law and guidance, during the entire Class Period. With regard to expense and duration, Defendant has made clear that it intends to vigorously defend this case, including by opposing class certification, moving for an interlocutory appeal of any certification order, moving for summary judgment, and appealing any judgment against it. In short, "full litigation of this case would be lengthy, expensive, and highly complex." *Holman*, 2009 WL 4015573, at *5.

With regard to the fifth factor above, Plaintiff expects little to no opposition to the Settlement. Plaintiff's counsel support the Settlement and have concluded that it is in the best interests of the Settlement Class and appropriate in light of the risks of continued litigation. As set forth above, the Settlement fits well within the range of settlements of similar cases, and it provides monetary relief to Settlement Class Members without requiring them to prove actual injury. Of course, the Settlement does provide Settlement Class Members the opportunity to present objections to the Court or, if they wish to pursue individual claims, to opt out.

With regard to the sixth factor above, the parties possess "ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). As noted, the parties exchanged and answered interrogatories and document requests, and Plaintiff was deposed. The parties cooperated in exchanging information sufficient to permit them to evaluate and reach a comprehensive settlement, and they were aided in this regard by a mediator with experience in similar cases. Moreover, the parties each analyzed legal

---

share recovery sought by plaintiffs), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *see also Strube*, 226 F.R.D. at 698 (approving settlement equal to about 2% of expert's damages calculation).

authorities relevant to FCRA stand-alone disclosure cases. The Settlement was reached on February 20, 2018, just days before the February 23, 2018 deadline for Plaintiff to file her class certification motion. Doc. 33; *see* Doc. 23. By the time the parties attended mediation, Plaintiff had conducted sufficient discovery and research and was fully prepared to move the Court for class certification had a resolution not been reached.

All of the factors relevant to approval of a class action settlement favor approval here.

### III. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

Courts in the Middle District of Florida and elsewhere have previously certified class action lawsuits alleging similar violations of 15 U.S.C. 1681b(b)(2)(A)(i)-(ii). *See, e.g., Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *2 (M.D. Fla. June 28, 2017)(Moody, J.); *Coles v. Stateserv Medical of Florida, LLC et al,* No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) (D.E.. 45); *Fosbrink v. Area Wide Protective, Inc.,* 8:17-cv-01154-JSM-CPT, (M.D.Fla., May 8, 2018,)(Moody, J.)(D.E. 58). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Holman*, 2009 WL 4015573, at *2 (quoting *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006); internal punctuation omitted). The proposed Settlement Class here meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).

Rule 23(a) imposes four requirements for the certification of any class. First, the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). That requirement is easily satisfied here as Defendant concedes that there are approximately 10,771 Settlement Class Members. *See, e.g., Holman*, 2009 WL 4015573, at *2. Moreover, the identities of the Settlement Class Members (who are job applicants) can be ascertained from

9

records available to Defendant.

Second, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common issue may suffice. *See, e.g., Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009) ("[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.") (internal quotation marks omitted). Under Plaintiff's theory of recovery, that requirement is met by the common questions of (1) whether including **any** material in a disclosure form beyond the mere fact that a prospective employer will obtain a consumer report violates the FCRA and (2) whether Defendant willfully violated the FCRA.

Rule 23(a)(3) imposes a "typicality" requirement, which "is satisfied by showing the existence of 'a sufficient nexus ... between the claims of the named representative and those of the class at large.'" *Holman*, 2009 WL 4015573, at *2 (*quoting Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003)). That requirement is met here because the claims of the named plaintiff and those of the Settlement Class Members all stem from the same basic facts and legal theory—they were the subject of a background check obtained through what Plaintiff contends is a disclosure form that fails to satisfy the FCRA's stand-alone disclosure requirement. *See, e.g., Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Further, Plaintiff seeks the same relief on her own behalf and on behalf of each Settlement Class member, *i.e.*, statutory damages available under the FCRA.

The final 23(a) requirement is "adequacy," which is met if (1) "'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation'" and (2) the plaintiffs lack "'interests antagonistic to those of the rest of the class.'"" *Holman*, 2009 WL

10

4015573, at *2 (quoting *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir. 1987)). Both of those things are true here. Plaintiff's counsel and their firm are experienced in class action litigation and, specifically, in litigating claims under the FCRA. *See* Exhibit C (Declarations of Marc Edelman, Andrew Frisch and Ryan Morgan). Plaintiff has no interests antagonistic to those of the Settlement Class.

In addition to Rule 23(a), a class must satisfy the requirements of one of the types of class actions authorized by Rule 23(b). Here, the Settlement Class meets the requirements of Rule 23(b)(3). The common questions identified above predominate over any individual questions that might be identified. Fed. R. Civ. P. 23(b)(3) (court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual class members"). Whether a disclosure form that includes any material beyond the mere fact that a prospective employer will obtain a consumer report violates the FCRA is an over-arching common issue that is critical to determining liability.

Further, in the context of this Settlement, there is no question that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Administration of a single, comprehensive Settlement would be superior to multiple individual lawsuits asserting the same claims.

**IV.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL AND PLAINTIFF APPOINTED AS CLASS REPRESENTATIVE.**

Plaintiff's counsel initially identified, investigated and asserted the claims of Plaintiff and the Settlement Class, and, as set forth above, continued to prosecute and investigate those claims

throughout the discovery period. *See* Fed. R. Civ. P. 23(g)(1) (directing court appointing class counsel to consider "work counsel has done in identifying or investigating potential claims in the action"). As set forth in Exhibit C hereto, the Declarations of Marc Edelman, Andrew Frisch and Ryan Morgan, Plaintiff's counsel has "experience in handling class actions" and "other complex litigation," including "the types of claims asserted in [this] action." *Id.* In fact, Plaintiff's Counsel have been approved as class counsel in several Rule 23 FCRA class actions alleging violations of 15 U.S.C. 1681b(b)(2). *See, e.g., Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *2 (M.D. Fla. June 28, 2017)(Moody, J.); *Coles v. Stateserv Medical of Florida, LLC et al,* No. 8:17-cv-829-T-17-AEP, (M.D. Fla. April 10, 2017) (D.E. 45); *Fosbrink v. Area Wide Protective, Inc.,* 8:17-cv-01154-JSM-CPT, (M.D.Fla., May 8, 2018)(Moody, J.)(D.E. 58); *Musa v. SOS Security LLC*, No. 2:17-cv-05681-MCA-SCM (D.N.J, Newark Division, April 16, 2018)(D.E. 42). That experience and the research conducted in this case have provided counsel with "knowledge of the applicable law." *Id.* Further, "the resources that counsel" have "commit[ted] to representing the class" have been substantial, as evidenced by their work in this case. *Id.* (Plaintiff's Counsel will submit further detail regarding their expenditure of resources in this case with their motion for an award of attorneys' fees and expenses). In short, Plaintiff's Counsel have represented the Settlement Class well and will continue to do so.

Plaintiff has also represented the Settlement Class well. She has answered interrogatories, gathered documents, given a deposition, and monitored the progress of this action. The Court should appoint her as Class Representative.

**V.     THE PROPOSED NOTICE SHOULD BE APPROVED.**

The Settlement provides for individual, mailed notice and a website that contains detailed information about the case and the Settlement. Under the Settlement Agreement, the Settlement Administrator will mail a notice to each Settlement Class Member within 30 days of entry of the Preliminary Approval Order. The notice will be in substantially the same form as Exhibit C to the Settlement Agreement ("Notice") and will be sent via postcard (single card) through the U.S. Mail to Settlement Class Members' last known addresses (updated through the National Change of Address database ("NCOA") or comparable means). RTG will bear the complete costs of sending the Notice.

In addition, within 30 days of entry of the Preliminary Approval Order, the Settlement Administrator will establish a website that contains the Settlement Agreement, documents such as the operative complaint and answer, and a Question and Answer Notice that contains responses to numerous potential questions about the Settlement. The Question and Answer Notice is attached as Exhibit D to the Settlement Agreement. RTG will bear the costs of the settlement website.

Both the Notice and the Question and Answer Notice describe the Settlement, set forth the Settlement Class Members' rights and options (including filing claim forms, objecting, opting out, and appearing), and provide means by which Settlement Class Members can obtain further information about the Settlement. *See Johnson v. NPAS Sols., Inc.*, 2017 WL 6060778, at *2 (S.D. Fla. Dec. 4, 2017) (approving "postcard notice, claim form, and Question & Answer Notice, which are attached as exhibits to the [class action] Settlement Agreement").

The notice procedures provided by the Settlement comply with Rule 23(c)(2) and due process. Those procedures include "individual notice to all [Settlement Class] members who can be identified through reasonable effort," *i.e.*, records available to RTG and use of the NCOA or

13

comparable means. Fed. R. Civ. P. 23(c)(2)(B). The Notice states in clear, concise, and plain language the nature of the case, the class definition, the issues in the case, that Settlement Class Members may appear through an attorney if they desire, that the Court will exclude from the Settlement Class those Settlement Class Members who request exclusion, the procedures for requesting exclusion, and the binding effect of a class judgment. *Id.* The Court should thus approve the Notice and notice procedures in the Settlement.

### VI. THE COURT SHOULD APPROVE A SCHEDULE AND PROCEDURES FOR A FAIRNESS HEARING, FILING CLAIMS, OPTING OUT, OBJECTING, AND FILING A MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARDS.

Plaintiff requests that, in conjunction with preliminarily approving the Settlement, the Court schedule a fairness hearing to determine whether to finally approve the Settlement. Plaintiff also requests that the Court approve the deadlines and procedures the Settlement Agreement provides for filing claims, opting out, objecting, and filing a motion for attorneys' fees, expenses, and an incentive award for Plaintiff. Under the Settlement Agreement, the schedule would be as follows:

| | |
|---|---|
| Settlement Administrator mails Notice and sets up Settlement Website ("Notice Date") | Within 30 days of Preliminary Approval Order |
| Deadline for Motion for Attorneys' Fees, Expenses, and Incentive Award | 30 days before Fairness Hearing  days after Notice Date |
| Deadline for Objections | 60 days after Notice Date |
| Deadline for Opt Outs (Exclusion Requests) | 60 days after Notice Date |
| Deadline for Motion for Final Approval | 10 days before Fairness Hearing |
| Fairness Hearing | TBD by Court |
| Deadline for Filing Claim Forms | 30 days after Fairness Hearing |

14

The procedures for opting out, objecting and submitting claim forms are set forth in detail in Section IV of the Settlement Agreement, and the procedures for filing a motion for attorneys' fees, expenses, and an incentive award are set forth in Section V. Plaintiff respectfully requests that opt out and objection procedures be included in the Preliminary Approval Order. *See Johnson*, 2017 WL 6060778, at **2-3; *Almanzar*, 2015 WL 10857401, at **4-5. The Settlement Agreement provides for the Claim Form to be posted on and submitted via the Settlement Website, an appropriate provision given that the Settlement Class Members (job applicants) received their disclosure forms and submitted their applications online. The Claim Form, which is attached as Exhibit E to the Settlement Agreement, requires only limited information (name, address, phone number, Claim Number) and a statement that the person submitting the form was in fact a job applicant included in the class definition.

WHEREFORE, Plaintiff thus respectfully requests that the Court enter the Proposed Order attached hereto as Exhibit B.

/s/ *Marc R. Edelman*
Marc R. Edelman (FBN 96342)
medelman@forthepeople.com
MORGAN & MORGAN, P.A.
One Tampa City Center
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-223-5505

C. Ryan Morgan (FBN 15527)
rmorgan@forthepeople.com
MORGAN & MORGAN, P.A.
P.O. Box 4979
Orlando, FL 33802
Telephone 407.420.1414
Fax: 407.245.3401

Andrew Frisch (FBN 27777)
afrisch@forthepeople.com

MORGAN & MORGAN, P.A.<br>
600 North Pine Island Road, Suite 400<br>
Plantation, Florida 33324<br>
Telephone: (954) WORKERS<br>
Facsimile: (954) 327-3013

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of May, 2018, the foregoing was electronically filed the with the Clerk of the Court by using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Marc R. Edelman*